183 So. 226

STATE v. BURTON SWARTZ CYPRESS CO.

No. 34201.

June 27, 1938.

Rehearing Denied Aug. 5, 1938.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellant.

Charles J. Rivet, Sp. Asst. to Atty. Gen., for the State.

ODOM, Justice.

Defendant is a domestic corporation. As a basis for computing the franchise tax due by it for the year 1933, under Act No. 8 of 1932, it made out and submitted to the Secretary of State a statement showing that it had capital stock, subscribed and paid in, amounting to $120,000, surplus amounting to $1,031,602.91, and real estate in this State assessed at $29,850. It accompanied the report with a remittance of $29.85, this being $1 per $1,000 of the assessed value of its property in this State. Subsection (4), Section 1, Act No. 8 of 1932.

The State ruled defendant to show cause why it should not pay an additional sum of $1,121.75, plus penalties amounting to $224.35 and attorney's fees of $134.61. The State alleged that the correct amount due by defendant was "one dollar ($1.00) for each one thousand dollars ($1,000.00) on the determined amount of its capital stock, surplus and undivided profits." Subsection (4), Section 1.

Answering the rule, defendant denied liability for any sum in excess of the amount remitted with its report, and set up as a defense that in the year 1933 it was not actively engaged in any business in this State and all it did was to retain the ownership of its assets and continue its charter here. It alleged that its only asset in this State was a tract of denuded land in St. James Parish, assessed at $29,850. The answer sets out that the principal asset of the company, as shown on its books and as revealed by its return to the Secretary of State, was a 60 per cent interest in certain timbered lands in the State of Florida, but that " * * * prior to 1932 said Florida timber lands were conveyed to the Lee Cypress Company, a Delaware corporation, * * * and upon such conveyance defendant became the owner of sixty per cent (60%) of the shares of stock issued by said Lee Cypress Company, the consideration for the issuance of said stock to defendant being the conveyance by defendant to said Lee Cypress Company of its sixty per cent (60%) interest in said Florida timber lands".

Defendant further alleged that in 1932 and 1933 the certificates representing said shares of stock "were not physically within the State of Louisiana, but were kept at the office of the defendant in the State of Florida. * * * that the Lee Cypress Company was not qualified to do business in Louisiana, did no business in Louisiana and had no property in Louisiana".

When the rule came up for trial, counsel for the State admitted all the allegations in defendant's answer. No testimony was adduced. There was judgment for the State as prayed for, and the defendant appealed.

The second clause of subsection (4), Section 1, Act No. 8 of 1932, which relates to domestic corporations, provides that:

" * * * said corporation shall pay a franchise or license tax for the privilege of carrying on, doing business or the continuance of its charter within this State, at the rate of one dollar ($1.00) for each one thousand dollars ($1,000.00) on the determined amount of its capital stock, surplus and undivided profits, determined as herein provided for."

The defendant, being a domestic corporation and desiring to continue its charter here, must, for the privilege of doing so, pay the franchise or license tax required by the above quoted clause of the statute, unless it is relieved from doing so by some special exception to the general rule.

There are exceptions to the general rule. One is found in Subsection (3), Section 1, of the act, which reads as follows:

"(3) If any corporation organized under the laws of the State of Louisiana operates or does business, in whole or in part, outside the State of Louisiana, said corporation shall pay the tax hereby levied only on that

·part of its capital stock, surplus and undivided profits allocated to operations and business within the State of Louisiana, in the same manner as the capital stock, surplus and undivided profits of foreign corporations are allocated under the provisions of this act."

Another exception is found in the last clause of Section 3 of the act, which reads as follows:

"Any parent or holding corporation, having one or more subsidiary corporations, shall be entitled to deduct from its capital, surplus and undivided profits, as herein defined, the capital, surplus and undivided profits, as herein defined, of such subsidiary corporation, if such subsidiary or subsidiaries have paid the tax (if any) due by them hereunder. Subsidiary corporation is defined to be a corporation the capital stock of which to an extent of at least 80% is owned by a parent or holding corporation."

The question, then, is whether defendant is relieved under either of these exceptions.

∎ We do not think it is. Counsel for defendant argue that their client finds shelter under the first exception, which provides that, if any domestic corporation "operates or does business, in whole or in part, outside the State of Louisiana," it shall pay the tax "only on that part of its capital stock, surplus and undivided profits allocated to operations and business within the State of Louisiana". This means, of course, that a domestic corporation is relieved of the payment of the tax on that portion of its capital stock, surplus and undivided profits "allocated to operations and business" outside the State.

Referring to the fact that defendant has invested the major portion of its capital stock, surplus and undivided profits in the State of Florida in the manner stated above, counsel say in their brief at page 5:

"Upon these facts the question for decision is whether defendant (a domestic corporation) is taxable in Louisiana for 1933, under Act No. 8 of 1932, upon that portion of its capital, surplus and undivided profits invested and employed in Florida (outside of Louisiana) in the manner detailed above."

It is perfectly clear, we think, that a domestic corporation is taxable in Louisiana under the statute, upon the entire amount of its capital stock, surplus and undivided profits, unless the whole or a part thereof is allocated to the operation or the conduct of a business or businesses outside the State of Louisiana, or allocated to subsidiary corporations as provided in the last clause of Section 3 of the act. The mere fact that a domestic corporation has invested, in whole or in part, its capital stock, surplus and undivided profits in the capital stock of a foreign corporation, which is neither a subsidiary of the domestic corporation nor operated by it, affords no reason why such domestic corporation should not pay the tax here on the whole amount of its capital stock, surplus and undivided profits.

One reason is—and this is sufficient—that the transactions relating to such investments are business dealings which must necessarily be consummated at the office of

the company in this State. Domestic corporations are authorized to do business in this State. Here is where they are authorized by their charters to transact their business. The purchase by local corporations of lands or any other property is a business transaction which takes place here and not in another State where the property may be located.

Another reason, if another need be stated, is that such investments are not excepted from the general rule that domestic corporations must pay to this State the franchise or license tax on the amount of their capital stock, surplus and undivided profits for the privilege either of carrying on, doing business or continuing their charters in this State. The only exceptions to the general rule found in the statute are (1) where a domestic corporation "operates or does business, in whole or in part, outside the State of Louisiana" and allocates the whole or a part of its capital stock, surplus and undivided profits to the operation of such business, and (2) where a parent or holding corporation has one or more subsidiary corporations which pay independently the tax due by them.

In either of these cases, deductions may be made. But the statute makes no mention of deductions for foreign investments.

It is conceded that the Lee Cypress Company, a Delaware corporation which owns lands in Florida, in which corporation defendant owns stock, is not a subsidiary of the defendant corporation. And it is clear that defendant has not in a legal sense allocated any part of its capital stock and surplus to the operation and business of that corporation. What it has done, and all it has done, is to acquire stock in that foreign corporation.

Counsel for appellant say in their brief that they "rely primarily upon the interpretation given to Act No. 8 of 1932 in State v. Wesson Oil & Snowdrift Co., Inc., 180 La. 823, 157 So. 728". They concede, however, that, in as much as the Lee Cypress Company, a foreign corporation in which defendant owns stock, is not a subsidiary of the defendant, the case at bar "does not present the identical question passed upon in the Wesson Oil Case".

The Wesson Oil Company Case has no application here. In that case, as in this one, the State demanded the payment of the franchise tax based upon the entire amount of the capital stock, surplus and undivided profits of the Wesson Oil Company, a domestic corporation. The defense was that the Wesson Oil Company was a parent or holding domestic corporation "and as such was entitled to deduct from its own capital, surplus, and undivided profits, the capital, surplus, and undivided profits of its subsidiaries, as provided for by section 3 of the statute, because the subsidiary corporations had paid the franchise tax due, in accordance with the provisions of the statute, on all capital, surplus, and undivided profits allocated for the purpose of carrying on their businesses in this state, and because the balance of the capital, surplus, and undivided profits of the subsidiary corporations was employed in carrying on their respective businesses outside of the state and, consequently, not subject to the franchise tax under the act in question".

We sustained the defense in that case, basing our holding upon a finding that the Wesson Oil Company was "a Louisiana holding or parent corporation composed of several domestic and foreign subsidiaries", which subsidiaries had in fact paid the franchise tax "due, in accordance with the provisions of the statute".

There was but one issue involved in that case, and our ruling was confined strictly to that issue. The issue was clearly stated and definitely passed upon. That case, therefore, is not authority on any point relating to the payment of the franchise tax due by domestic corporations except the one therein involved.

We find no merit in counsel's suggestion that the levying of the franchise tax on the total amount of defendant's capital stock, surplus and undivided profits, under such circumstances as here exist, would be an infringement of its constitutional rights. In Cream of Wheat Company v. Grand Forks County, 253 U.S. 325, 40 S.Ct. 558, 64 L.Ed. 931, it was held that the fact "That the property and business of a corporation are entirely in another state does not make it any the less subject to taxation in the state of its domicile", whether the tax be a franchise or a property tax.

For the reasons assigned, the judgment is affirmed.