304 So.2d 293 (1974)
NORTH BATON ROUGE DEVELOPMENT COMPANY, INC.
v.
COLLECTOR OF REVENUE, State of Louisiana, et al.
No. 54835.
Supreme Court of Louisiana.
December 2, 1974.
*294 David L. Dawson, Jr., Baton Rouge, for defendant-applicant.
Arthur R. Carmody, Jr., John M. Madison, Jr., Wilkinson, Carmody & Peatross, Shreveport, for plaintiff-respondent.
DIXON, Justice.
Writs were granted in this case on the application of the Collector of Revenue from an adverse ruling by the Court of Appeal. North Baton Rouge Development Company, Inc. v. Collector of Revenue, State of Louisiana et al., 294 So.2d 571 (1974). The Court of Appeal reversed in part a decision of the district court. On an appeal to the district court by the taxpayer, the district court had affirmed a ruling of the Board of Tax Appeals, which had affirmed an additional assessment against the taxpayer by the Collector of Revenue.
The additional assessment was for corporation franchise taxes for the taxable years 1962 through 1965 under R.S. 47:601 et seq. Only the adjustment for the years 1964 and 1965 remains in dispute.
The taxpayer is a domestic corporation. Two issues are presented:
I. Is the commercial domicile of the corporation in Louisiana or Missouri? (R.S. 47:606, subd. A(1)(h);
II. Was there a proper allocation of revenues from and investments in Rice Carden Corporation, contended by the taxpayer to be a "subsidiary" of the taxpayer, and from Kansas City Southern Industries, contended by the taxpayer to be a "parent" of the taxpayer?
*295 I. Commercial Domicile.
Louisiana's corporate franchise tax law imposes an annual tax of $1.50 per thousand on a corporation's capital stock, surplus, undivided profits and borrowed capital. For the purpose of ascertaining the tax, the statutes establish a formula, and every corporation subject to the tax is deemed to have employed in Louisiana the proportion of its entire capital stock, etc., computed on the basis of a ratio obtained by taking the arithmetical average of two ratios: (1) the ratio that sales and revenue attributable to Louisiana bears to total sales and revenue; and (2) the ratio that the value of the taxpayer's property situated or used in Louisiana bears to the value of all its property wherever situated or used.
The statutes establish methods for determining each ratio. The computation of the ratio of "other revenue and dividends" attributable to Louisiana is regulated by R.S. 47:606, subd. A(1)(h) and (2)(f):
"A. General allocation formula.
"For the purpose of ascertaining the tax imposed in this Chapter, every corporation subject to the tax is deemed to have employed in this state the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:
"(1) The ratio that the net sales made to customers in the regular course of business and other revenue attributable to Louisiana bears to the total net sales made to customers in the regular course of business and other revenue. For the purposes of this Sub-section net sales and other revenues attributable to Louisiana shall be determined as follows:
"(h) Other interest and dividends shall be attributed to the state in which the securities or credits producing such revenue have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs shall be at the commercial domicile of the corporation.
"(2) The ratio that the value of all of the taxpayer's property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used. In determining value, depreciation and depletion reserves must be deducted from the book values of the properties in question. The various classes of property and assets shown below shall be allocated with and without Louisiana on the bases indicated:
"(f) Stocks and bonds not included in (b) or (d) above shall be allocated to the state in which they have their business situs or in the absence of a business situs to the state in which is located the commercial domicile of the taxpayer."
The revenues involved in the case before us are the result of stock ownership by the North Baton Rouge Development Company, Inc. in foreign corporations.[1]
North Baton Rouge Development Company, Inc. was formed in 1946. Its only *296 office is in East Baton Rouge Parish. (It describes itself as a wholly owned subsidiary of the Louisiana and Arkansas Railway Company, a Delaware corporation with its principal office in Kansas City, Missouri). The L & A is a wholly owned subsidiary of the Kansas City Southern Railway Company, a Missouri corporation with its principal office in Kansas City. The KCS and the L & A operate railroad lines in Louisiana and other states. The L & A accounting department was at one time in Shreveport, Louisiana.
The president of North Baton Rouge Development Company was Ernest Wilson, who lived in Baton Rouge and was a developer of real estate for warehousing. The principal asset of North Baton Rouge Development Company, Inc. was approximately 200 acres of land north of Baton Rouge. The plans were to develop the wooded land into suitable lots for industrial locations for railway industrial development purposes for the benefit of the L & A Railway. Other real estate was acquired by the taxpayer in Shreveport and Lake Charles, as well as another location in East Baton Rouge Parish. Paul Sippel of Shreveport was vice president of North Baton Rouge Development Company as well as vice president of the L & A Railway. E. A. Staman of Shreveport was secretary of the North Baton Rouge Development Company.
North Baton Rouge Development Company was not authorized to do business in any other state than Louisiana and did no business in any state other than Louisiana.
In the taxpayer's 1966 return, for the tax year 1965, the value of the real and personal property in Louisiana is listed at $714,830.00. The total capital stock, surplus, undivided profits and borrowed capital was $13,626,444.05. Slightly more than half was listed by the taxpayer as employed in Louisiana ($6,813,222.03).
Wilson was paid an undisclosed amount for his services for the taxpayer. There was only one full time employee of the taxpayer in Louisiana; he was a heavy equipment operator. Two or three other part time employees were located in Louisiana.
Until the 1960s, the only business activity of North Baton Rouge Development Company was the development of industrial sites in Louisiana. For the years 1962 through 1965 North Baton Rouge Development Company filed franchise tax returns showing its investment in and revenue from foreign corporations. This change in operations represented a policy decision by the Kansas City Railway interests to purchase securities to be held in the name of North Baton Rouge Development Company. All the decisions to purchase were made by the management of the Kansas City Southern Industries and its subsidiary companies in Kansas City. Financing was either furnished by the parent or subsidiary railroad corporations, or obtained through them.
The record does not disclose the nature of the management process for North Baton Rouge Development Company in its primary functionthe development of Louisiana industrial sites designed to benefit the railroad. However, three of its four officers were located in Louisiana, and its charter provided, until 1967, that the annual meeting of the shareholders should be held in Shreveport, Louisiana.
The stock certificates, to which the revenues here involved are attributable, were kept by the Kansas City Southern Railway interests in Kansas City, Missouri. North Baton Rouge Development Company had no office in Missouri, did no business there and was not qualified to do business there. North Baton Rouge Development Company filed no income or franchise tax returns in any state other than Louisiana.
As a general rule, in Louisiana and elsewhere, the tax situs of "intangibles" is at the domicile of their owners. Sugar v. State of Louisiana, through the Collector of Revenue, 243 La. 217, 142 So. 2d 401 (1962). The Louisiana corporate *297 franchise tax laws, however, recognizing the realities of the widespread nature of corporate activities, now provide that the tax situs of securities or credits producing revenue shall be either at "the business situs of such securities or credits" or at "the commercial domicile of the corporation." The securities or credits qualify for a "business situs" only if they are so used in the taxpayer's business as to acquire a situs of their own. It is not contended in these proceedings that the securities involved had a "business situs."
"Commercial domicile" is a concept which is employed to permit the taxation of property or activity of nonresident corporations by the state in which managerial activities occurred in quantity and character sufficient to avoid contention of a nonresident corporation that taxation of its activities and property located outside the bounds of the taxing state amounted to deprivation of property without due process of law.
Louisiana, however, has decided that the tax situs of securities and credits producing revenues, even for a domestic corporation, shall not be Louisiana unless the securities have acquired in this State a "business situs" (not here applicable) or unless the corporation's "commercial domicile" is in Louisiana.
"Commercial domicile" is not defined in the franchise tax statute. It is generally understood as defined in Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed.2d 1143 (1936). The Wheeling corporation was organized under the laws of Delaware, and there maintained an office and kept stock ledgers and records of transactions concerning the stock. Franchise taxes were paid in Delaware. Originals of stock records were kept in New York City. The general business offices were located in Wheeling, West Virginia, where resided the officers of the corporation. Principal manufacturing plants of the corporation were located in Ohio. 80% of the sums spent by the corporation in conducting its business was spent outside West Virginia. West Virginia attempted to levy an ad valorem property tax on intangibles (accounts receivable and bank deposits) of the Wheeling Steel Corporation outside the State of West Virginia. The United States Supreme Court held that the State of West Virginia had not "transcended the limits of its jurisdiction and thus deprived appellant of its property without due process of law." (Wheeling Steel Corporation v. Fox, 298 U.S. 193, 215, 56 S.Ct. 773, 779, 80 L.Ed. 1143).
Prior to 1964, intangibles were taxable either at their "business situs" or at the legal domicile of the corporation. Following two decisions by this court on the subject, the Louisiana franchise tax provisions were amended in 1964 to include the concept of "commercial domicile."
This court considered the concept of "commercial domicile" in two cases in 1961. In the first, United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748, we held that the commercial domicile for income tax purposes of the United Gas Corporation, a Delaware corporation, was in Shreveport, the commercial center for its widespread operations. This court interpreted the Wheeling case, supra, as follows:
"In other words, the `commercial domicile' exists where the principal place of business is located and from which the corporation's activities function and are managed." (129 So.2d 748, 756).
The second case was United Gas Corporation v. Fontenot, 241 La. 564, 129 So.2d 776, which involved the Louisiana corporation franchise tax law. It held that the tax situs of revenue derived from out-of-state securities was not Louisiana, because those securities had no "business situs" in Louisiana. Because the Louisiana franchise tax law did not incorporate the concept of "commercial domicile" this court *298 held that intangibles owned by a foreign corporation had their tax situs at the legal domicile of the owner (unless their use in Louisiana operations gave them a business situs in this State).
Subsequently, the Louisiana corporation franchise tax act was amended to include the concept of "commercial domicile," The taxpayer, in opposing the adjustment, has confused the concepts of "business situs" and "commercial domicile." The taxpayer relies heavily on the fact that the decisions to purchase the securities involved were made by the corporate management of the Kansas City railway interests in Kansas City, that the funds were in the main supplied from the related corporate interests and that no function of the North Baton Rouge Development Company occurred with respect to these securities, except to hold them as owner, to receive revenues therefrom and to account for the proceeds. The taxpayer strongly argues that these securities never had any kind of situs or domicile in Louisiana.
It is not the domicile or the situs of the securities that is determining. If the securities have no "business situs," as all prior tribunals in this case have agreed, we are no longer concerned with the situs or the location of the securities. It then becomes a question of the "commercial domicile" of the corporation. R.S. 47:606, subd. A(1)(h).
The facts outlined above indicate that there is only one commercial domicile of North Baton Rouge Development Company. Assuming that no management decisions in Louisiana were made concerning the acquisition of the revenue producing securities involved here, and assuming that, as a practical matter, the books and records concerning the receipt of all funds derived from the securities are handled in Kansas City, and assuming that all decisions concerning the disbursement of these revenues are made in Kansas City, we must conclude nevertheless that the "commercial domicile" of North Baton Rouge Development Company, Inc. is in Louisiana.
The taxpayer argues that, as a matter of fact, it does no business with respect to the securities here involved. With this position we agree. The taxpayer only holds the securities, and receives revenue from them.
It has been held that a company holding securities is not "doing business" when it receives dividend income from those securities, and that if a corporation engages in other activities, and also acts as a holding company, its holding company activities do not constitute doing business. Southern Pacific Company v. McColgan, 68 Cal. App.2d 48, 156 P.2d 81, 86 (1945).
The only business done by North Baton Rouge Development Company is in Louisiana. It is here that it has developed industrial railway sites. The record does not show that any of its assets are located outside the State of Louisiana except the securities here involved. Its only employees are in Louisiana. Its only office is in Louisiana. Its president is in Louisiana. If North Baton Rouge Development Company can be said to have a commercial domicile in any place, it is in Louisiana and Louisiana alone.
Consequently, the allocation by the Collector of Revenue of the securities involved here was clearly made to Louisiana, the commercial domicile of the corporation.
II. Inclusion of Value of Alleged Subsidiary and Parent Companies.
The second issue before us is whether the Collector of Revenue correctly included the value of the stock of Kansas City Southern Industries, Inc. and Rice Carden Corporation owned by North Baton Rouge Development Company when computing North Baton Rouge Development Company's franchise tax. Plaintiff contends that *299 these two corporations are parent and subsidiary respectively and is therefore entitled to an allocation for capital used in Louisiana by these companies as permitted by R.S. 47:606, subd. B, which reads as follows:
"B. Allocation of intercompany items. For the purpose of allocation, investments in, advances to, or revenues from a parent or subsidiary corporation shall be allocated to Louisiana on the basis of the percentage of capital employed in Louisiana for corporation franchise tax purposes by the parent or subsidiary corporation. A subsidiary corporation is any corporation the majority of the capital stock of which is actually, wholly or substantially owned by another corporation and whose management, business policies and operations are, howsoever, actually, wholly or substantially controlled by another corporation; which latter corporation shall be termed the parent corporation." (Emphasis added).
In order to establish its right to allocate intercompany items, the taxpayer must show that (1) the alleged subsidiary or parent actually owns wholly or substantially the other corporation and (2) actually controls wholly or substantially the policies and management of the other corporation. Kansas City Southern Railway Co. v. Reily, 242 La. 235, 135 So.2d 915 (1961); Arkansas Fuel Oil Corp. v. Fontenot, 225 La. 166, 72 So.2d 465 (1954); State v. Burton Swartz Cypress Co., 190 La. 947, 183 So. 226 (1938). Both requirements must be met.
With regard to the taxpayer's ownership of Kansas City Southern Industries, Inc., a parent-subsidiary relationship did not exist for purposes of franchise tax assessment, as the definition specifically requires actual ownership of the taxpayer's capital stock by Kansas City Southern Industries, Inc. The record clearly shows, and plaintiff concedes, that Kansas City Southern Industries, Inc. owned all the stock in Kansas City Southern Railway which in turn owned the L & A Railway who actually owned all of the stock in the North Baton Rouge Development Company. (In 1967 the L & A transferred its North Baton Rouge Development Company stock to the Kansas City Southern Railway). For this reason Kansas City Southern Industries, Inc. did not qualify as a parent for purposes of the franchise tax, and the Collector of Revenue properly included the value of its stock owned by North Baton Rouge Development Company.
The record indicates that North Baton Rouge Development Company did actually own 100% of the capital stock in Rice Carden Corporation. However, the record does not establish that North Baton Rouge Development Company "actually, wholly or substantially controlled" Rice Carden Corporation. The plaintiff's failure to establish this control prevents it from qualifying for the allocation as provided in this subsection. The Collector of Revenue correctly included the value of Rice Carden Corporation stock owned by North Baton Rouge Development Company in computing North Baton Rouge Development Company's franchise tax.
For the reasons assigned, the judgment of the Court of Appeal is reversed and the judgment of the trial court is reinstated, at plaintiff's cost.
SUMMERS, J., dissents.
NOTES
[1] Rice Garden Corporation, principal office in Kansas City, Missouri; holds title to certain industrial sites in Louisiana; no other operations or contacts with the State of Louisiana.

Kansas City Southern Industries, Inc., a Missouri corporation, the parent company of KCS and L & A.
Mid American Pipeline Companyno operations in Louisiana.
Ransburg Electro-Coating Corporation, an Indiana corporation.
Boston Herald-Traveler, a newspaper corporation of Massachusetts.
Thiess Holdings, Ltd. of Australia.
Chicago-Skyway Toll Bridge Revenue Bonds.
Grasis Fabricating Company, a Delaware corporation, a subsidiary of Kansas City Southern Industries.
Design Center, Inc., with home office in Missouri and no contacts with the State of Louisiana.