865 So.2d 34 (2004)
KEVIN ASSOCIATES, L.L.C. (Successor in Interest through Merger to Yendis Properties, Inc.)
v.
Brett CRAWFORD, Secretary of the Department of Revenue, State of Louisiana.
No. 2003-C-0211.
Supreme Court of Louisiana.
January 30, 2004.
*35 Cloyd F. Van Hook, Theodore D. Vicknair, John J. Weiler, Weiler & Rees, New Orleans, Counsel for applicant.
*36 Nicole Crighton, Frederick W. Bradley, Oreck, Bradley, Crighton, Adams & Chase, Counsel for Respondent.
KIMBALL, Justice.
Kevin Associates, L.L.C., filed the instant suit against the Louisiana Department of Revenue (hereinafter "the Department") seeking recovery of certain income and franchise taxes it paid under protest after receiving tax assessments from the Department. Because we find the commercial domicile of the taxpayer was in Louisiana and the imposition of the taxes at issue does not offend the Due Process and Commerce Clauses of the U.S. Constitution, we conclude the taxpayer is not entitled to a refund of the taxes, penalties and interest it paid under protest. The judgments of the lower court to the contrary are reversed.

Facts and Procedural History
This matter involves the former K & B family of corporations. K & B, Inc., a Delaware corporation, was the corporate parent and had three direct subsidiaries: Virginia Corporation, Valerie Corporation, and Yendis Properties, Inc. These three sister corporations were incorporated in Delaware in 1991. Virginia Corporation was formed to hold the stock of the K & B operating corporations in various states that managed the activities of the drug stores in the various states. Virginia Corporation was also the parent of K & B Services, Inc., a Louisiana corporation that performed administrative and bookkeeping services for all the K & B corporate entities. Valerie Corporation was formed to hold the intellectual property rights of K & B. Yendis Properties, Inc. (hereinafter "Yendis") was formed to hold the stock of various subsidiaries that owned real estate in Louisiana and other southern states and to make loans to affiliated corporations. The real estate owned by Yendis's subsidiaries consisted primarily of store properties that were leased to the drug stores.
The instant suit concerns the tax liabilities of Yendis, which was set up as a Delaware holding company to acquire certain tax advantages.[1] After conducting an audit, the Department issued a proposed deficiency assessment of Louisiana corporate income and franchise taxes plus interest and penalty for taxable years ending September 30, 1994 and September 30, 1995 in the total amount of $1,108,250.83 against Yendis. Yendis paid the assessment under protest and timely filed a Petition for Refund of Tax Paid Under Protest. In its petition for refund of the taxes paid under protest, Yendis alleged it had no liability to pay any Louisiana corporate income or franchise taxes because it did not conduct business within the State of Louisiana during the tax period. Rather, Yendis contended, it maintained its corporate office and domicile in Delaware and conducted its corporate activities in that state. Yendis further alleged its only sources of income were dividends paid to it by its subsidiaries, which did business in Louisiana, Mississippi, and Texas, and interest received from loans made to corporations doing business in states other than Louisiana.
After a bench trial, the district court rendered judgment in favor of Yendis, finding Yendis is entitled to a refund of the taxes paid under protest, plus interest and *37 court costs. Although the district court issued written reasons for judgment, the basis for its decision in favor of Yendis remains unclear. The district court stated the issue in terms of whether Yendis is subject to Louisiana corporate income and franchise tax. It then cited the Department's argument that resolution of this issue turns on the commercial domicile of Yendis. The district court next reiterated Yendis's arguments that it cannot be taxed by Louisiana unless the tests required under the Due Process and Commerce Clauses are satisfied. Finally, the district court noted that the K & B shareholders devised a plan to form the Delaware corporations to escape taxation in Louisiana and determined there was nothing wrong with this conduct. After reciting the foregoing, the district court simply rendered judgment in favor of Yendis.
The court of appeal affirmed the judgment of the district court. Kevin Associates, L.L.C. v. Crawford, 01-2652 (La.App. 1 Cir. 11/8/02), 834 So.2d 465. In reaching its decision, the court of appeal explained the concept of commercial domicile, and reviewed the arguments of the parties and the evidence presented in this case. The court of appeal concluded that "the evidence does not reveal manifest error by the trial court in its determination that a sufficient nexus for the establishment of a commercial domicile in Louisiana was not demonstrated." Id., 01-2652 at p. 5, 834 So.2d at 468-69. Additionally, the court of appeal determined that the record did not show any commercial activities by Yendis that would constitute "doing business" in Louisiana. Finally, the court of appeal stated that a non-resident parent company is not subject to the jurisdiction of Louisiana simply because one of its subsidiaries exists in this state. For these reasons, the court of appeal affirmed the determination of the district court that Yendis was entitled to a refund, with interest, of the taxes paid under protest.
We granted certiorari upon the Department's application to consider the correctness of the lower courts' judgments that Yendis was entitled to a refund of the Louisiana taxes it paid under protest. Kevin Associates, L.L.C. v. Crawford, 03-0211 (La.4/21/03), 847 So.2d 1177.

Discussion
The facts in this case are largely undisputed. The ultimate issue, whether the Department can properly require Yendis, a Delaware holding company, to pay Louisiana corporate income and franchise taxes, is, in this particular case, a legal one to be decided by applying the correct legal standards to the facts of this matter.
Prior to trial, the parties executed a stipulation of facts that are binding upon both parties. The parties stipulated that during the taxable years at issue, K & B, Inc. was incorporated in and had legal domicile in Delaware and had three wholly-owned first-tier subsidiaries, Yendis, Valerie Corporation, and Virginia Corporation, that were also incorporated in and had legal domicile in Delaware. The parties further stipulated that during the taxable years at issue, the officers of Yendis were Sydney J. Besthoff, III, chairman of the Board; James J. LeBlanc, President; Ronald J. Dyer, Treasurer and Assistant Secretary; Virginia F. Besthoff, Secretary and Assistant Treasurer; and Robert Meyer, Assistant Secretary. With the exception of Robert Meyer, all members of the board of directors and the officers of Yendis were residents of New Orleans, Louisiana. Robert Meyer was a resident of Delaware and a partner in the Delaware law firm of Bayard, Handelman & Murdock, P.A. The parties also stipulated that Yendis had a bank account with PNC Bank in Delaware and the authorized signatories over this account during the *38 years at issue were Sydney J. Besthoff, III, James LeBlanc, Virginia Besthoff, and Ronald Dyer. Robert Meyer was not an authorized signatory of Yendis's Delaware bank account. Another stipulation entered into by the parties was that during the taxable years at issue, funds were transferred by wire in and out of the Delaware bank accounts of Yendis, Valerie Corporation, and Virginia Corporation. Sydney J. Besthoff, III, James LeBlanc, Virginia Besthoff, Ronald Dyer, and Jan Raley, all residents of Louisiana, were authorized to issue wire instructions in reference to Yendis's Delaware bank account. Robert Meyer, a director and officer of Yendis, did not have wire transfer authority over Yendis's Delaware bank account. The parties further stipulated that all wire transfer instructions to PNC Bank in Delaware regarding Yendis's bank account were initiated in New Orleans, Louisiana. An additional stipulation was that, during the taxable years at issue, Yendis had no employees in the State of Delaware. Finally, the parties stipulated that during the years at issue, Yendis had executed with Bayard, Handelman & Murdock, P.A. an equipment lease for one drawer of a four-drawer file cabinet with lock and an Agreement for Provision of Services.
The undisputed testimony presented at trial revealed that Yendis claimed the address of Robert Meyer's law firm as its Delaware address. Yendis's name was not listed on the building's directory, but K & B was listed on the directory. The reception area of the address was of a typical law firm and did not have anything with Yendis's name displayed. The law firm's receptionist was unfamiliar with Yendis. Yendis's original records were maintained in Delaware, in the leased file cabinet drawer. Yendis received mail from the Delaware Secretary of State and PNC Bank at its Delaware address. The mail was forwarded from Mr. Meyer's office to K & B Services at K & B Plaza in New Orleans, Louisiana. The forms were completed in Louisiana and were mailed back to the Delaware Secretary of State directly from New Orleans. Additionally, the bank statements were reconciled in New Orleans and then the original records were sent back to Delaware.
In a consolidated federal tax return for the K & B group of corporations prepared by Arthur Andersen's New Orleans office, Yendis's address was listed as that of K & B Plaza in New Orleans. Evidence at trial showed instances in which Yendis used letterhead for its correspondence showing its address as K & B Plaza in New Orleans. Yendis's witnesses claimed the use of this letterhead was a clerical error. Yendis also received correspondence from Arthur Andersen at the New Orleans address.
Yendis had no employees. Yendis received income in the form of dividends declared by its subsidiaries. The dividends declared by Yendis's subsidiaries were received into Yendis's Delaware bank account. Yendis then loaned the money received as dividends to its sister corporation, Virginia, and received interest income from those loans. Although Yendis made loans only to Virginia Corporation, the minutes of its November 26, 1991, annual meeting do not indicate that the corporation was restricted to making loans solely to Virginia. The minutes state that Yendis was "formed in August 1991 in order to receive dividends from its subsidiaries and make loans to affiliated debtor corporations." The minutes further provide that the loans would be made pursuant to a "Master Borrowing Note Agreement to other affiliated or subsidiary entities operating in K & B, Incorporated's 7-state area." In July of every year, Ronald Dyer and Sydney Besthoff, III determined how the funds loaned by Yendis to Virginia *39 were to be transferred within the corporate family and prepared a schedule of accounting for the various transactions. The actual funds were transferred within the corporate family in one day and began and ended in the K & B Services New Orleans account. The decisions regarding the transactions were made by Mr. Dyer and Mr. Besthoff at K & B Plaza in New Orleans, Louisiana. Wire transfers were executed in accordance with the schedule in Louisiana. After execution of the wire transfers, Mr. Dyer and Mr. Besthoff wrote and signed confirmation letters to the Delaware bank in Louisiana. Additionally, Mr. Dyer prepared annually in Louisiana a checklist showing the activities that were to take place for Yendis.
Most of the annual board of directors' meetings were held in Delaware in the conference room of Mr. Meyer's law firm. Several meetings were held in New Orleans, with Mr. Meyer participating by telephone. The minutes of meetings were prepared in New Orleans before the meetings took place and were used as an agenda for the meetings. They were revised as necessary after the meeting was conducted. Additionally, several unanimous consents of the board of directors were executed in lieu of meetings. The unanimous consents generally dealt with Yendis's approval of its subsidiaries' actions as a stockholder. The unanimous consents were prepared by a New Orleans Law firm.
Based on these facts, the Department contends that Yendis can be required to pay Louisiana corporate income and franchise taxes because the corporation was managed from Louisiana, and, therefore, was commercially domiciled in Louisiana. The Department argues that corporate records and management decisions for Yendis were actually made in Louisiana. The Department asserts that although Yendis claims it had an office in Delaware, its alleged office was only a mailing address for Mr. Meyer's law firm. Furthermore, the Department contends, Yendis rented only one drawer of a four-drawer file cabinet located in Mr. Meyer's firm, and the rental of this drawer cannot be considered rental of office space in Delaware. The Department argues that the decisions regarding the flow of funds among the corporations and the authorizations for the wire transfers were managerial decisions that were made in Louisiana. The Department also claims that all board of director activity regarding Yendis's management of its subsidiaries was undertaken in Louisiana. According to the Department, Yendis is subject to Louisiana corporate income and franchise tax because its commercial domicile is in Louisiana.
Yendis, on the other hand, takes the position that its commercial domicile cannot be assigned to Louisiana. It asserts its sole purpose as a holding company was to receive dividends from its subsidiaries and to lend the received dividends to Virginia Corporation on an annual basis. Yendis contends its corporate plan was automatic and was directed and performed entirely within Delaware. Yendis further argues the activities of Mr. Dyer and Mr. Besthoff were ministerial in nature and were undertaken as employees of K & B Services, which was the paymaster for the entire group of K & B corporations. Finally, Yendis contends that the imposition of Louisiana corporate income and franchise taxes would offend the Due Process Clause and the Commerce Clause of the U.S. Constitution.
It is undisputed by the parties that under Louisiana income and franchise tax statutes, La. R.S. 47:243 and La. R.S. 47:606, the income and capital at issue in this case is allocable to the commercial *40 domicile of the taxpayer. The concept of commercial domicile is an exception to the general rule that the situs of intangibles is at the legal domicile of the owner. North Baton Rouge Dev. Co., Inc. v. Collector of Revenue, 304 So.2d 293 (La.1974); United Gas Corp. v. Fontenot, 241 La. 564, 129 So.2d 776 (1961). In North Baton Rouge Development Co., we explained commercial domicile as a concept "employed to permit the taxation of property of activity of Nonresident corporations by the state in which managerial activities occurred in quantity and character sufficient to avoid contention of a nonresident corporation that taxation of its activities and property located outside the bounds of the taxing state amounted to deprivation of property without due process of law." North Baton Rouge Dev. Co., 304 So.2d at 297. A commercial domicile exists where the corporation maintains a "paper domicile" in the state of incorporation such that the sole function performed in the incorporating state is to "breathe life into the corporation, while the corporation actually functions and is managed from offices maintained in another state." United Gas Corp. v. Fontenot, 241 La. 488, 508, 129 So.2d 748, 755-56 (1961) (internal quotations omitted). Thus, a corporation may acquire a commercial domicile outside the state of its incorporation when it does not operate at its legal domicile, but maintains in another state its principal business office from which its management functions. United Gas Corp. v. Fontenot, 241 La. 564, 571, 129 So.2d 776, 778 (1961).
A commonly used definition of the term "commercial domicile" is "the place from which the business is directed or managed." Michael J. McIntyre et al., Symposium: Designing a Combined Reporting Regime for a State Corporate Income Tax: A Case Study of Louisiana, 61 La. L.Rev. 699, 727 n. 90 (2001) (citing Unif. Div. of Income for Tax Purposes Act § 1(b), 7A U.L.A. 331 (1985)). The concept underlying commercial domicile has been explained as follows:
[I]t is the better view to ignore the mere semblance of a domicile of a corporation created by technical compliance with the legal requirements of the incorporating state, i.e., a technical or "paper" domicile, and to permit, for tax purposes, the substantial domicile of the corporation, based on the actual commercial practices of the particular corporation, to prevail, since that state is, obviously, furnishing the bulk of governmental protection to the corporation.
United Gas Corp. v. Fontenot, 241 La. at 509, 129 So.2d at 756.
The concept of commercial domicile as explained above has been incorporated into the Louisiana Department of Revenue Regulations. In its original brief to this court, Yendis states that the regulation defining the concept of commercial domicile was accepted by both parties "and effectively defined the battleground at trial." Br. at 14. The regulation provides:

Commercial Domicile is in that state where management decisions are implemented which is presumed to be the state where the taxpayer conducts its principal business and thereby benefits from public facilities and protection provided by that state. Commercial domicile cannot be assigned to a state where the taxpayer has no substantial operation or facility, other than the location of one or more management level employees. The location of board of directors' meetings is not presumed to create commercial domicile at the location.
LAC 61:I.306(A)(1)h.iii.
The facts of the instant case demonstrate that, as a holding company, Yendis engaged in little or no corporate activity on a daily basis. However, we find a *41 consideration of the material facts, which are essentially undisputed, as a whole reveal that the commercial domicile of Yendis was in Louisiana. When management of Yendis was required, the management was undertaken in and directed from Louisiana.
As memorialized in the November 1991 corporate minutes, Yendis was formed to receive dividends from its subsidiaries and to make loans to affiliated debtor corporations. The dividends Yendis received from its subsidiary corporations were to be loaned to debtor corporations under a Master Borrowing Note Agreement through banking arrangements with the Bank of Delaware on a repetitive basis. Yendis's witnesses testified this business purpose was thoroughly discussed at its annual meeting held in Delaware. Yendis contends that it carried out this purpose "on autopilot" and all tasks performed relative to the receipt of dividends and the making of loans were administrative tasks performed by employees of K & B Services. The record reveals, however, that management decisions and activities related to the making of the loans occurred in Louisiana.
Although a corporation is a juridical person with a personality distinct from that of its members, La. C.C. art. 24, it only acts through its officers, employees, and other agents. Doe v. Parauka, 97-2434, p. 5 n. 5 (La.7/8/98), 714 So.2d 701, 705 n. 5. Each year, Mr. Dyer prepared and Mr. Besthoff approved a schedule indicating the dividends to be paid to Yendis by each subsidiary, the loan to be made to Virginia, and the loans Virginia, in turn, was to make to its subsidiaries. The schedule was developed and approved in Louisiana and outlined the procedure to be used and the documents to be produced. In making this annual schedule, Mr. Dyer and Mr. Besthoff, both officers and directors of Yendis, were in effect conducting the business of Yendis, which was to receive dividends and make loans to Virginia. Yendis claims that these activities were merely administrative and that Mr. Dyer and Mr. Besthoff performed these duties as employees of K & B Services. We disagree. Although we recognize the difficulties of pinpointing the exact capacities in which Mr. Dyer and Mr. Besthoff acted due to the fact that they held myriad positions in various corporations within the K & B corporate group, we find the scheduling of the loans to Virginia constituted a management activity on the part of Yendis's management. The schedule involved a determination of how the funds would flow for bookkeeping purposes. The funds began in the New Orleans bank account of K & B Services. K & B Services transferred the funds to the bank account of Yendis's subsidiary, which declared them as dividends and transferred the funds to Yendis's Delaware bank account. Yendis wired the dividends it received to Virginia's bank account as a loan, and the funds were then transferred back to the account of K & B Services. These transfers were all made during the course of one day.
Mr. Besthoff testified that after the schedule was developed and approved, the next step was its implementation. The instructions for the wire transfers from Yendis to Virginia were initiated in New Orleans. After verbal authorization for the wire transfers was given, Mr. Dyer, as Treasurer, and Mr. Besthoff, as Chairman, sent written confirmation to Yendis's Delaware bank. These instructions, too, were initiated in New Orleans. The activities undertaken by Yendis's officers and directors concerning the wire transfer instruction constituted management of Yendis's business affairs. Furthermore, in addition to being management activities in and of themselves, the wire transfer instructions, *42 which came from Louisiana, implemented the management decisions made in Louisiana regarding the schedule of the transfer of funds. This implementation of management decisions serves to satisfy, at least in part, the definition of commercial domicile contained in the Department's regulations.
As a holding company, part of Yendis's business was authorizing certain actions of its subsidiaries. The authorization was often provided through the use of a unanimous consent of the board in lieu of meetings. These unanimous consents were prepared in Louisiana. The unanimous consents contained in the record generally relate to Yendis's function as the sole shareholder of the stock of its subsidiaries. For example, one unanimous consent in lieu of meeting authorized the transfer of all of Yendis's shares of stock in its subsidiary BOK Corporation to another subsidiary, Yendis Realty, Inc. The unanimous consents were not initiated by the Delaware director, Mr. Meyer, and were presumably conceived in Louisiana by one of the Louisiana directors, who then directed Louisiana counsel to prepare them.
Yendis, as a holding company, had little activity anywhere. However, our reading of the record as a whole convinces us that the substantial management activities that did occur took place in Louisiana. Yendis's funds were controlled from New Orleans in K & B Plaza. Its management determined in New Orleans that authorizations of its subsidiaries' actions were in order and had the appropriate documentation prepared. The minutes of Yendis's Delaware board meetings were drafted in New Orleans prior to the meeting and used as an agenda for the meeting. Yendis used, from time to time, the New Orleans address of its corporate headquarters as its own address. All of these factors, taken together, lead us to the conclusion that Yendis's principal place of business was in K & B Plaza in New Orleans, Louisiana.
Yendis's "office" in Delaware consisted of nothing more than one drawer of a file cabinet. Although it received mail at the address of the law firm in which the file cabinet was located, the mail was collected and forwarded to New Orleans. Once the business presented by the mail was taken care of in New Orleans, the records were sent back to Delaware for storage. Yendis kept many of its original documents in the file drawer, but some documents, including minutes of meetings, were missing. Yendis had a bank account in Delaware into which it received dividends from its subsidiaries, but the bank account was managed from New Orleans. Yendis conducted some of its board meetings at Mr. Meyer's law firm in Delaware, but this factor alone is not determinative of commercial domicile. The undisputed testimony and evidence presented in this case, as a whole, shows that Yendis maintained a "paper domicile" in Delaware while it actually functioned from K & B Plaza in New Orleans.[2] Because Yendis's commercial domicile was in Louisiana, it is subject to Louisiana corporate income and franchise taxes.
The determination that Yendis is subject to Louisiana corporate income and franchise taxes because its commercial domicile is in Louisiana does not run afoul of the Due Process and Commerce Clauses of the U.S. Constitution. In Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. *43 1904, 119 L.Ed.2d 91 (1992), the Supreme Court held that, for purposes of taxation, the nexus requirements of the Due Process and Commerce Clauses are not identical because the two Clauses have different constitutional concerns and policies. The Court explained that due process concerns the fundamental fairness of governmental activity and requires some definite link or some minimum connection between a state and the person, property or transaction it seeks to tax. Here, the record reveals that Yendis was managed in and functioned from Louisiana. It is therefore clear that Yendis had substantial contacts with Louisiana and the Due Process Clause does not preclude Louisiana from imposing corporate income and franchise taxes on Yendis. In contrast to that of the Due Process Clause, the nexus requirement of the Commerce Clause concerns the effects of state regulation on the national economy and is a means for limiting state burdens on interstate commerce. A tax will be sustained against a Commerce Clause challenge so long as the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. Id., 504 U.S. at 311, 112 S.Ct. at 1912 (citing Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977)). In the instant case, Yendis's principal place of business was in Louisiana and the corporation was managed in Louisiana. It therefore had a physical presence in Louisiana such that a substantial nexus for purposes of the Commerce Clause was established. As a corporation with a presence in the state, Yendis received protection and benefits from the state. There is no evidence to suggest that the tax is not fairly apportioned or that it discriminates against interstate commerce. We therefore find the imposition of Louisiana corporate income and franchise taxes on Yendis does not violate the Commerce Clause.
In the instant case, the district court determined that Yendis was not subject to the taxes sought to be imposed by the Department. The basis for its decision is not clear. The court of appeal, however, concluded that the district court determined that a "sufficient nexus for the establishment of a commercial domicile in Louisiana was not demonstrated." The court of appeal found no manifest error in the district court's determination of a lack of "sufficient nexus." However, because this particular case contained no dispute of the material facts and involved the determination of a legal issue, the court of appeal erred in utilizing the manifest error standard of review. See State v. Payne, 01-3196, p. 6 (La.12/4/02), 833 So.2d 927, 933 ("[T]he legal findings of the trial court are subject to review without the great deference standard we attach to credibility determinations."). The district court in this case was not called upon to exercise its fact-finding function due to the stipulation of facts entered into by the parties and the nature of the material undisputed facts presented through evidence and testimony at trial. However, its judgment contained an erroneous application of the law. In this situation, reviewing courts are not to apply the manifest error standard of review, but rather are to apply the de novo legal standard of review. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071 (La. 1983) ("[I]f the trial court's decision was based on its erroneous interpretation or application of law rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference.").
Here, applying the correct standard of review, we conclude the lower courts erred in their application of the law of commercial domicile to the facts of this case. *44 While we recognize a business's ability to structure its affairs so as to minimize taxation, we find Yendis's principal place of business was in Louisiana. We additionally find that Yendis functioned in and was managed from Louisiana. Consequently, the commercial domicile of Yendis was in Louisiana. The Louisiana corporate income and franchise taxes sought to be imposed on Yendis does not conflict with the protections of the Due Process or Commerce Clauses of the U.S. Constitution. We therefore conclude that Yendis is not entitled to a refund of the taxes, penalties and interest it paid under protest.
In the last page of its original brief to this court, the Department prayed for attorney fees pursuant to La. R.S. 47:1512.[3] The issue of attorney fees pursuant to La. R.S. 47:1512 was not contained in the Department's application for certiorari and was not briefed or argued in this court and will therefore not be considered. See generally Boudreaux v. DOTD, 01-1329 (La.2/26/02), 815 So.2d 7.

Decree
For the reasons assigned, we find the commercial domicile of Yendis was in Louisiana. We also conclude that the Louisiana corporate income and franchise taxes sought to be imposed on Yendis does not conflict with the protections afforded by the Due Process or Commerce Clauses of the U.S. Constitution. Yendis is therefore not entitled to a refund of the taxes, penalties and interest it paid under protest. The judgments of the lower courts to the contrary are hereby reversed.
Reversed.
NOTES
[1] Kevin Associates, L.L.C., is the successor by merger to Yendis. As a result of the merger in 1997, Yendis no longer has a separate corporate existence. Its rights and obligations, including alleged tax liabilities, were assumed by Kevin Associates. However, because the tax liabilities at issue were assessed against Yendis and the corporation under review in this case is designated as "Yendis" throughout the record, we will continue to refer to the entity at issue as Yendis in this opinion.
[2] Some of the exhibits presented in this case contain suggestions from various sources concerning ways to establish a holding company that is subject to taxation only in the state of incorporation. We express no opinion as to whether the wholesale adoption of each suggestion would lead to a different conclusion in this case.
[3] La. R.S. 47:1512, entitled "Power to employ counsel," provides:

The collector is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due under this Sub-title, or to represent him in any proceeding under this Sub-title. If any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor.