WINDHORST, J.
This matter involves a dispute as to whether the tax exemption in La. R.S. 47:301(10)(x) applies to appellant, Metals USA Plates & Shapes Southeast, Inc.'s ("Metals USA") tax refund request for taxes paid on fuel during the period January 2011 through February 2014. The Louisiana Department of Revenue ("LDR") denied Metals USA's refund request. We affirm.
Facts and Procedural History
Appellant, Metals USA, operates a welding and metals fabrication business. Metals USA filed a tax refund request for certain taxes paid in error during the period January 2011 through February 2014, including one refund request for taxes paid for welding gases exempt under La. R.S. 47:301(10)(x). The relevant published version of La. R.S. 47:301(10)(x) and the version Metals USA relied upon in its refund request reads as follows:
For the purposes of the sale and use tax imposed by the state... the terms 'retail sale' or 'sale at retail' shall not include the following:
(i) The sale or purchase by a person of any fuel or gas, including but not limited to butane and propane.
(ii) Beginning July 1, 2008, the sale or purchase by any person of butane and propane.
LDR denied Metals USA's refund request under La. R.S. 47:301(10)(x), asserting the above-quoted version does not reflect the most recent expression of legislative will relative thereto and thus does not apply as written.
Prior to 2008, La. R.S. 47: 301(10)(x) stated "For purposes of sales and use tax imposed by the state..., the terms 'retail sale' or 'sale at retail' shall not include the sale or purchase by a consumer of any fuel or gas, including but not limited to butane and propane, for residential use by the consumer." During the 2008 Second Extraordinary Session of the Louisiana Legislature, the Legislature passed two acts (HB 1, which became Act No. 1, and SB 7, which became Act No. 9) which revised La. R.S. 47:301(10)(x), but resulted in two different versions of this exemption provision. Act No. 1's revision created a broad tax exemption, while Act No. 9 created a more narrow tax exemption. Pursuant to House Bill 1 (hereafter "HB 1") / Act No. 1, and Senate Bill 7 (hereafter "SB 7") / Act No. 9, La. R.S. 47:301(10)(x) stated, respectively, as follows,
For purposes of sales and use tax imposed by the state..., the terms 'retail sale' or 'sale at retail' shall not include the sale or purchase by a person of any fuel or gas, including but not limited to butane and propane. [Act No. 1]
For the purposes of the sale and use tax imposed by the state... the terms 'retail *1231 sale' or 'sale at retail' shall not include the following:
(i) The sale or purchase by a consumer of any fuel or gas, including but not limited to butane and propane for residential use by the consumer.
(ii) Beginning July 1, 2008, the sale or purchase by any person of butane and propane. [Act No. 9.]
The legislative history for the 2008 Extraordinary Session reflects that (1) both Acts Nos. 1 and 9 were pre-filed on March 7, 2008; (2) the House of Representatives voted and passed Act No. 1 on March 12, 2008 and Act No. 9 on March 14, 2008; (3) the Senate voted and passed Act No. 1 on the morning of March 14, 2008 and Act No. 9 on the same afternoon; and (4) the governor signed Acts Nos. 1 and 9 on March 24, 2008. Because the Legislature passed two amendments to La. R.S. 47:301(10)(x), the Louisiana Law Institute attempted to merge the two amendments into La. R.S. 47:301(10)(x) and published this provision with language reflecting a broad tax exemption (see quoted published version on Page 1). The Institute used the term "person" from Act No. 1 instead of "consumer" from Act No. 9. The Institute also entirely deleted the limiting phrase, "for residential use by the consumer," from Act No. 9.
Pursuant to La. R.S. 24:253, the Law Institute publishes all new legislation and may renumber, rearrange sections or parts of sections, insert or change the wording of headnotes and change reference numbers. The Law Institute, however, cannot alter the sense, meaning or effect of any legislative act. Id. When two or more legislative acts conflict, the Law Institute is required to notify the Senate and the House of Representatives. See La. R.S. 24:252.
LDR, in denying Metals USA's request, asserted that the Law Institute had erroneously altered the meaning of La. R.S. 47:301(10)(x) and, that because Act No. 9 was passed after Act No. 1, Act No. 9 was the most recent expression of legislative will and governed. Under the version of this statute as amended by Act No. 9, the tax exemption is limited to purchases for residential use by the consumer. As Metals USA's welding gas purchases were for commercial use, LDR advised Metals USA the exemption did not apply to the butane and/or propane fuel purchases for which it sought a refund.
Metals USA sought review of LDR's denial of the refund requests by the Louisiana Board of Tax Appeals ("Tax Board"). During these proceedings, Metals USA and LDR entered into a Joint Stipulation, stipulating to the amounts of tax refunds granted to Metals USA and the amounts remaining in dispute. According to the Joint Stipulation, the amount remaining in controversy was reduced to $3,423.33 in sales tax paid on fuel. The only issue the Tax Board addressed was whether Metals USA's welding gas purchases were exempt from sales tax under La. R.S. 47:301(10)(x). The Tax Board found that these purchases were not exempt from sales tax and denied Metals USA's refund request. The Tax Board reached this conclusion after first finding that Act No. 1 and Act No. 9 conflict, stating in its Written Reasons for Judgment that the "dichotomy of tax treatment resulting from the separate application of Acts 1 and 9 to the facts of this case ipso facto creates a conflict between these two acts." The Tax Board then concluded that, based on the evidence, Act No. 9 controls because it was the most recent expression of legislative will on La. R.S. 47:301(10)(x) because it was passed after Act No. 1 during the 2008 Second Extraordinary Session of the Louisiana Legislature. It further concluded that because Act No. 9 governs application of the exemption and applies only to consumption for residential use, Metals USA's refund request must be denied.
*1232 Assignments of Error
Appellant asserts the Tax Board erred in "judicially repealing" Act No. 1; in finding that Act No. 1 and Act No. 9 conflict; in failing to give effect to all laws passed by the legislature; and in finding that Act No. 9 tacitly repeals Act No. 1 without attempting to harmonize Act No. 1 with Act No. 9.
Law and Analysis
Because this appeal involves the determination of a legal issue, this court must apply the de novo standard of review. TCC Contrs., Inc. v. Hosp. Serv. Dist. No. 3 of Lafourche, 10-685 (La.App. 1 Cir. 12/8/10), 52 So.3d 1103, 1108, citing Kevin Associates, L.L.C. v. Crawford, 3-211 (La. 1/30/04), 865 So.2d 34, 43. On the issue of the interpretation of multiple legislative acts or amendments on the same provision, the Louisiana Supreme Court has set forth the following guidance:
The legislative branch is presumed to intend to achieve a consistent body of law. 1A N. Singer, Sutherland Statutory Construction § 23.09 (Sands 4th ed. 1986). When a legislature enacts a statute without mention of existing statutes on the same subject matter, the later act may, by necessary implication, effect the repeal of the preexisting law. However, there is a presumption against implied repeal, based on the theory that the legislature envisions the whole body of law when it enacts new legislation. Id. at § 23.10. Thus, a court should give harmonious effect to all acts on a subject when reasonably possible. However, when two acts are clearly irreconcilable, are clearly repugnant as to essential matters relating to the acts, and are so inconsistent that the two cannot have concurrent operation, then the presumption against implied repeal falls, and the later statute governs. Id.
Accordingly, when inconsistent amendments to the same statute have been adopted at the same legislative session, the court should attempt to construe the statute so as to give effect to both amendments consistent with legislative intent. Only when it is impossible to give effect to both amendments should the court allow the time of passage of the acts to be the controlling factor. Allowing the later act to control effectively recognizes a repeal by implication of the earlier act, and such recognition of a repeal by implication should occur only when the acts passed in the same session are so repugnant that they cannot stand together. State v. Piazza, 596 So.2d 817, 819 (La. 1992).
Applying the above principles here, we first address whether Act No. 1 and Act No. 9 conflict, or whether the amendments to La. R.S. 47:301(10)(x) in these Acts can be reconciled. If they conflict and cannot be reconciled, the law clearly states that the latest expression of legislative will controls. Id.
LDR effectively argues that the Law Institute reconciled the two Acts by expanding an exemption applicable only to consumption for residential use and expanding it to include commercial use. It asserts that "[i]t cannot be legitimately argued that that the two acts can be reconciled or harmonized when it is necessary to omit an entire portion of Act No. 9 to merge the two." The Tax Board concluded that there was a conflict between the two Acts because the application of the exemption under the two versions separately has two different results.
We agree with the Tax Board's conclusion. Given the apparent difference resulting from the application of La. R. S. 47:301(10)(x) with the inclusion of each legislative act separately, there is a conflict in this case. It is undisputed that with Act No. 1's provisions, the exemption would apply to Metals USA, and that with Act *1233 No. 9's limiting provisions, the exemption would not apply. Because one version expands application of the exemption to consumption for commercial use, while the other limits its application to consumption for residential use, we agree that the two acts conflict. As such, we find the Tax Board properly concluded that the two provisions conflict. We also find that the two Acts cannot be reconciled as the exemption must either apply to commercial use or not. Act No. 1 and Act No. 9 cannot be merged and still incorporate the intent of Act No. 9 in the exemption.
The next issue, the determination of which amendment applies, depends on which Act was the most recent expression of legislative will during the 2008 session. State v. Piazza, supra. The record shows that the Legislature passed Act No. 1 on the morning of March 14, 2008, and later passed Act No. 9 on the afternoon of March 14, 2008. This is determined by the both House and Senate Journals of March 14, 2008, which provide a history of every action taken by each chamber of the legislature on a given day of a legislative session. The relevant journal pages are exhibits admitted into evidence and are in the record.[1]
On the morning of March 14, 2008, the Senate passed HB 1 without amendments (Senate Journal, Page 5), and returned it to the House of Representatives where it was accepted without amendments to the bill (House Journal, page 15). Having been passed in identical form by both chambers, it was enrolled and signed by the Speaker of the House and the President of the Senate, and sent to the Governor. Later signed by the Governor, it became Act No. 1 of the 2008 Second Extraordinary Session.[2]
On the same morning, the Senate considered SB 7, which had been previously passed by the House with amendments to the bill, and returned to the Senate. Upon consideration of the amendments proposed by the House, the Senate voted to reject the House amendments (Senate Journal, Page 7, and Record p. 276), and shortly thereafter, the Senate recessed for lunch. The Senate reconvened at 1:45 P.M. (Senate Journal, Page 7, and Record p. 276), and a conference committee comprising three members of each chamber was appointed, which proposed a final version of SB 7. Later that afternoon, the House adopted the Conference Committee Report, i.e. , the proposed final version of SB 7 (vote and content appearing at House Journal, page 13). Later still, the Senate adopted the Conference Committee Report (content and vote appearing at Senate Journal, page 14). It was then signed by the Speaker of the House, the President of the Senate, and later by the Governor, becoming Act No. 9 of the 2008 Second Extraordinary Session.
Because the Senate Journal conclusively shows that final action was taken by the Senate on HB 1 on the morning of March 14, 2008 before the Senate's lunch recess, and further, that all final action on SB 7 was later taken by both the House and Senate after the Senate reconvened at 1:45 P.M., it is certain that SB 7 / Act 9 was the later and more recent expression of legislativ *1234 e will, and therefore prevails. Consequently, the broader exemption provided in HB 1 / Act 1 was limited by the legislature later in the same day by the passage of SB 7 / Act 9.
Applying La. R. S. 47:301(10)(x) as written with Act No. 9's amendment, the exemption only applies to relevant fuel purchases for residential use only. Appellant's pertinent fuel purchases were not for residential use and do not fall within the exemption. We therefore affirm the judgment of the Tax Board denying Metals USA's refund claims for welding gas purchases.
Conclusion
For the reasons stated above, we affirm the Tax Board's May 10, 2017 decision.
AFFIRMED
EDWARDS, PRO TEMPORE, J., CONCURS WITHOUT REASONS

All references to the Journals are for the date of March 14, 2008. Because the relevant Journal pages appear in several exhibits and multiple places in the record, we find it most clear to refer to them by their Journal page numbers, rather than to list them by multiple exhibit and record page numbers which would be confusing, except where necessary. All were admitted into evidence and appear in the Index of Exhibits in the case record.

The act number is determined by the sequence in which the Governor happens to sign bills, and is irrelevant in determining when a bill was passed by the legislature or takes effect.