29 So.3d 595 (2009)
James B. RACHAL, by and through his Duly Authorized Agent, Alice Fae REGAN, Individually, and on Behalf of all others Similarly Situated
v.
STATE of Louisiana, through the DEPARTMENT OF HEALTH AND HOSPITALS.
No. 2009 CA 0786.
Court of Appeal of Louisiana, First Circuit.
October 27, 2009.
Writ Denied March 5, 2010.
*596 Patrick W. Pendley, Stan P. Baudin, Plaquemine, Louisiana, and Joseph J. McKernan, Scott E. Brady, Baton Rouge, Louisiana, for Plaintiff/Appellant Alice Fae Regan, as executrix of the Succession of James B. Rachal, and on behalf of all others similarly situated.
Neal R. Elliott, Jr., Stephen R. Russo, Michael J. Coleman, Baton Rouge, Louisiana, for Defendant/Appellee Bureau of Legal Services Department of Health and Hospitals.
Claude F. Reynaud, Jr., Scott N. Hensgens, Baton Rouge, Louisiana, for Defendant/Appellee Ollie Steele Burden Manor, Inc. and St. Clare Manor.
Richard F. Zimmerman, Jr., Travis B. Wilkinson, Baton Rouge, Louisiana, for Amicus Curiae/Appellee Gulf States Association of Homes and Services for the Aging.
Before DOWNING, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The executrix of the succession of a nursing home patient appeals a summary judgment dismissing a claim for refund of charges billed to the patient by the nursing home to offset a daily "occupied bed fee" due from the nursing home to the Louisiana Department of Health and Hospitals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
From about December 17, 1999 until his death on November 9, 2006, the late James B. Rachal was a resident of a nursing home, Ollie Steele Burden Manor, owned and operated by Ollie Steele Burden Manor, Inc. (OSBM). OSBM also owned and operated another nursing home, St. Clare Manor.
During the time he resided at OSBM's nursing home, Mr. Rachal was a "private-pay" resident, meaning that his care was paid with personal funds or by private insurance, rather than through government-sponsored programs such as Medicare or Medicaid. Beginning from the time he was admitted, through sometime in the summer of 2005, Mr. Rachal was charged a daily "state provider tax" by *597 OSBM, in addition to charges for supplies, services, and room and board. The daily "state provider tax" charged by OSBM represented the cost of an "occupied bed fee" imposed by the Louisiana Department of Health and Hospitals (the Department) pursuant to the authority of La. R.S. 46:2625. The occupied bed fee was specifically identified as a per diem charge and denominated as a "state provider tax" in Mr. Rachal's initial admissions receipt and in later monthly invoices to him and other patients of OSBM. The itemized charge for the daily occupied bed fee represented the monthly total of the fee. At the time of Mr. Rachal's admission, the charge for the "occupied bed fee" was $5.22 per day. Sometime later, it was increased by the Department to $6.27 per day. The amount was later increased in the summer of 2005 to $7.27 per day.[1]
The charges for OSBM's services, including the itemized occupied bed fee, were paid by Mr. Rachal's insurer, Travelers Insurance Company, and by Mr. Rachal through January 2005, when the insurance coverage was exhausted. Thereafter, Mr. Rachal paid OSBM's charges with his own funds.
OSBM paid the Department the total amount of the occupied bed fee due for all occupied beds in its nursing home on a quarterly basis.
On September 25, 2002, Mr. Rachal, through his authorized attorney in fact and mandatory, Alice Fae Regan (Mr. Rachal's daughter), filed a "Class Action Petition," purportedly on his behalf and on behalf of all other residents of OSBM, St. Clare, and other nursing homes charging residents for the occupied bed fee, naming the Department as defendant. He alleged that according to the terms of La. R.S. 46:2625, the occupied bed fee was a debt of OSBM, rather than the private-pay patients billed for the fee by OSBM. Citing La. C.C. arts. 2302 and 2303, Mr. Rachal alleged that the Department as obligee was liable to restore the payments for the fee, on the grounds that the fee constituted the debt of OSBM rather than that of the private-pay patients, including Mr. Rachal, who paid the fee in the erroneous belief that they were the obligors. Mr. Rachal also requested injunctive relief against the Department, seeking to enjoin further collection of the fee from private-pay patients or a mandatory injunction ordering the Department to hold all payments of the fee in escrow pending determination of his action.
On the same day that the petition was filed, Mr. Rachal filed a motion to certify the action as a class action. No order fixing the motion to certify for hearing appears in the record, and there is no other indication that the action was ever certified as a class action.
The Department responded with a peremptory exception of no cause of action, but its exception was overruled by judgment signed on February 11, 2003. The Department answered the petition on February 12, 2003, denying its liability and also denying that any patient of a nursing home had ever paid the occupied bed fee to it directly. Although the Department admitted that La. R.S. 46:2625 did not authorize OSBM to bill and collect the occupied bed fee from a patient, it admitted that some nursing homes "passed on" the fee or increased their charges to patients to cover the fee.
On May 7, 2003, the Department filed a motion for summary judgment. The Department sought its dismissal on the grounds that the occupied bed fee was authorized by La. R.S. 46:2625, which was *598 in turn authorized by and in compliance with federal Medicaid regulations, and that Mr. Rachal's payment of the fee was payment of his own debt to OSBM, not payment of OSBM's debt for the fee to the Department.
The Department's motion for summary judgment was heard on July 7, 2003, and the trial court ruled in favor of the Department. Its judgment granting the motion and dismissing Mr. Rachal's petition was signed on July 31, 2003. On August 8, 2003, Mr. Rachal filed a motion for new trial. That motion was heard on November 10, 2003, and the matter taken under advisement. On January 6, 2004, the trial court issued its written reasons for judgment in favor of Mr. Rachal on his motion for new trial. On February 4, 2004, the trial court signed its judgment granting the motion for new trial and vacating the summary judgment in favor of the Department. The Department applied for supervisory writs from that judgment, and this court denied writs on June 28, 2004.
On April 21, 2005, Mr. Rachal filed a first supplemental and amending petition, adding OSBM as a defendant in its individual capacity and as alleged representative of a defendant class of nursing homes charging the occupied bed fee to their private-pay patients. He alleged that OSBM and other members of the defendant class were also obligated to restore the fee charged to him and other members of the plaintiff class, as no statute authorized nursing homes to bill such charges to private-pay patients.
OSBM filed a declinatory exception of lack of subject matter jurisdiction, contending that the fee constituted a tax imposed by the Department, and that jurisdiction vested in the Louisiana Board of Tax Appeals. Its exception was overruled by the trial court, and supervisory writs were later denied by this court and the supreme court. OSBM and the Department each filed answers to the first supplemental and amending petition in December 2005.[2]
Mr. Rachal died on November 9, 2006, and his daughter, Ms. Regan, as executrix of his succession, was substituted as plaintiff on October 25, 2007.
On December 5, 2007, the substituted plaintiff filed a second supplemental and amending petition, adding allegations regarding OSBM's ownership of two nursing homes, Ollie Steele Burden Manor and St. Clare Manor, and seeking recovery, on behalf of the plaintiff class, of all fees billed by and paid to OSBM by patients of the two nursing homes. The plaintiff also amended the petition to delete the prior alleged defendant class, thereby limiting the action to OSBM as defendant. The Department and OSBM each answered the second supplemental and amending petition, again denying liability to the plaintiff.
On April 10, 2008, OSBM filed a motion for summary judgment, seeking the dismissal of the plaintiffs cause of action against it. Its motion was originally fixed for hearing on June 23, 2008, but the hearing was continued several times. On May 15, 2008, the Department filed a motion for summary judgment. An amicus curiae brief was submitted on behalf of the Gulf States Association of Homes and Services for the Aging (Gulf States).
Both motions for summary judgment were eventually heard on November 17, 2008. At the conclusion of the hearing, the trial court issued oral reasons for judgment, granting both motions. Its judgment *599 granting the motions for summary judgment and dismissing the plaintiff's cause of action against both defendants was signed on December 9, 2008.
The plaintiff now appeals, contending that the trial court erred in granting both motions for summary judgment, as there exist general issues of material fact as to the plaintiffs causes of action against all defendants, and on the grounds that the law and evidence support the plaintiffs causes of action. Gulf States has again submitted a brief as amicus curiae.

STANDARD OF REVIEW
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court's determination of the issues. Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp., 07-2206, p. 5 (La. App. 1st Cir.6/6/08), 992 So.2d 527, 530, writ denied, 08-1478 (La.10/3/08), 992 So.2d 1018. The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Similarly, in a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the de novo standard of review, under which the trial court's legal conclusions are not entitled to deference. Kevin Associates, L.L.C. v. Crawford, 03-0211, p. 15 (La.1/30/04), 865 So.2d 34, 43.

DISCUSSION
The Louisiana Medical Assistance Trust Fund Act, La. R.S. 46:2621, et seq., was originally enacted by Acts 1992, No. 260, § 1, effective June 10, 1992. Its purpose is "to further provide for the operation of the Medicaid program in the state and for the maintenance of health care services available under that program." La. R.S. 46:2621. Use of the monies in the fund is expressly limited to "those programs for which federal financial participation under Title XIX of the Social Security Act is available." La. R.S. 46:2623(E).
Louisiana Revised Statutes 46:2625(A) provides, in pertinent part:
(1) The Department of Health and Hospitals is hereby authorized to adopt and impose fees for health care services provided by the Medicaid program on every nursing facility.... The amount of any fee shall not exceed the total cost to the state of providing the health care service subject to such fee. In addition, the amount of the fees imposed under the rules and regulations adopted shall not exceed the following:
(a) Ten dollars per occupied bed per day for nursing facilities.
. . .
(2) Any fee authorized by and imposed pursuant to this Section shall be considered an allowable cost for purposes of insurance or other third party reimbursements and shall be included in the establishment of reimbursement rates.[3]
According to the plain language of this statute, any fee adopted and imposed by the Department is to be imposed upon all *600 nursing facilities or nursing homes, and not upon their patients.
Louisiana Civil Code article 2302 provides:
A person who paid the debt of another person in the erroneous belief that he was himself the obligor may reclaim the payment from the obligee. The payment may not be reclaimed to the extent that the obligee, because of the payment, disposed of the instrument or released the securities relating to the claim. In such a case, the person who made the payment has a recourse against the true obligor.
Implicit in the foregoing language is the requirement that, in order to impose an obligation on the obligee to return the payment, the party paying in error must have paid or "made the payment" to the obligee. See La. C.C. art. 1857 ("Performance must be rendered to the obligee or to a person authorized by him.").
Louisiana Civil Code article 2303 provides that "[a] person who in bad faith received a payment or a thing not owed to him is bound to restore it with its fruits and products."
Based upon our review of the plaintiffs original and reply briefs, we summarize her contentions relating to her assignments of error as follows. The plaintiff contends that a genuine issue of material fact exists with regard to who actually paid the required occupied bed fee to the Department for purposes of La. C.C. arts. 2302 and 2303. She further contends that because of the manner in which OSBM billed the occupied bed fee to Mr. Rachal, a genuine issue of material fact exists as to whether he had the erroneous belief that he, rather than OSBM, owed the fee directly to the Department and that the fee was a "tax" imposed by the legislature upon him.
OSBM and the Department, on the other hand, contend that there are no material facts in dispute, and that the plaintiff has not shown that any such facts are in dispute. We agree. Based upon our review of the record, the material facts are those we described above relating to the factual background of this case, as well as the following:
(1) There was no formal written contract setting forth the agreement between OSBM and Mr. Rachal relating to the nursing home services and care provided to Mr. Rachal as a patient.
(2) Upon his admission to OSBM's nursing home in December 1999, Mr. Rachal was provided with an admissions receipt documenting the initial charges (based upon daily rates) and a security deposit received, and summarizing the care level and the nature of other services provided (cable television and an "activity fund.") The initial charges included a daily "provider tax" of $5.22 for fifteen days.
(3) Following his admission, Mr. Rachal was invoiced on a monthly basis by OSBM, and each charge included the separately itemized "state provider tax."
(4) The "state provider tax" itemized on each of OSBM's monthly invoices for services to Mr. Rachal and other patients represented its actual cost for the "occupied bed fee" imposed by the Department pursuant to La. R.S. 46:2625(A).
(5) All charges billed by OSBM, including the separately itemized "state provider tax," for nursing home services provided to Mr. Rachal were paid directly to OSBM by either Travelers Insurance Company or Mr. Rachal.
(6) Neither Mr. Rachal nor the plaintiff expressed any objection to the separately itemized "state provider tax" in OSBM's monthly invoices from his admission *601 in December 1999 until the filing of this action on September 25, 2002.
(7) The Department has never sent a bill for the occupied bed fee to any patient of a nursing home, including Mr. Rachal.
(8) The Department has never received, accepted, or collected any money from any patient of a nursing home, including Mr. Rachal.
A fact is material if "its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery." Champagne v. Ward, 03-3211, p. 5 (La.1/19/05), 893 So.2d 773, 777. We cannot conclude that Mr. Rachal's supposed subjective belief that the occupied bed fee was a "tax" rather than a "fee" is in any way a material fact bearing upon the determination of the legal issues, in light of the undisputed fact that the "state provider tax" on OSBM's invoices in fact represented a charge for the occupied bed fee imposed by the Department under the authority of La. R.S. 46:2625. The occupied bed fee, whether legally considered a "tax" or a "fee," was properly imposed upon nursing homes, including OSBM, by the Department under its statutory authority. The undisputed evidence shows that Mr. Rachal agreed to pay OSBM's charges as invoiced, including the separately itemized "state provider tax" item. The questions that the plaintiff has presented for our determination are purely legal ones, rather than factual ones, and therefore particularly appropriate for determination by summary judgment "as a matter of law." See La. C.C.P. art. 966(C)(1).
With regard to her claim against the Department, the plaintiff essentially contends that because OSBM separately itemized the occupied bed fee on its invoices, and for accounting purposes designated its patients' payments of the fee as a receivable to be paid to the Department, rather than as revenue, OSBM's debt for the occupied bed fee was in fact paid by Mr. Rachal and the other patients. This circuitous argument is unconvincing, and we conclude that it lacks merit.
As between the Department and OSBM, OSBM owed a valid debt to the Department for the occupied bed fees. OSBM, as debtor, was the party who paid that debt to the Department. Nothing in the language of La. R.S. 46:2625, the pleadings, or the evidence in the record supports a finding that OSBM was authorized by the Department to accept any payment for the occupied bed fee due from Mr. Rachal in the capacity of purported debtor of the Department. OSBM as debtor paid the debt to the Department. The source of the funds with which OSBM paid that debt is irrelevant for purposes of attempting to impose liability upon the Department under La. C.C. arts. 2302 and 2303. For the plaintiffs argument to have merit, it would have to be concluded that there was only one debt for the occupied bed fee owed as between all three parties: the Department, OSBM, and Mr. Rachal. As the Department has contended, and as the trial court held, there were in fact two separate debts or obligations: (1) OSBM's debt to the Department for the occupied bed fee imposed by La. R.S. 46:2625; and (2) Mr. Rachal's debt to OSBM for its charges, which included its cost associated with the occupied bed fee.
As observed by the trial court in its reasons for judgment, parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971.[4] The plaintiff, on the other hand, initially argued in the trial *602 court that the converse principle should control in this situation; that is, if not authorized by statute, OSBM may not bill a patient for the cost of the state-imposed occupied bed fee as part of its contract to provide nursing home services. Thus, the plaintiff seemed to argue that anything not expressly authorized by law is of necessity illegal.[5] The plaintiff cited no authority for that proposition, which runs counter to the longstanding general rule in our state of freedom of contract on all matters not forbidden by law. See Travelers Ins. Co. v. Joseph, 95-0200, pp. 9-10 (La.6/30/95), 656 So.2d 1000, 1004.[6] In short, the plaintiff simply posited that it is "improper" for OSBM to shift the financial burden of the occupied bed fee to its patients, without legal support or authority for that assumption of impropriety or illegality. At the hearing on the motions in the trial court, and in her brief on appeal, the plaintiff seems to concede that OSBM and other nursing homes may validly pass on the cost of the occupied bed fee to their patients as part of the charges for their services. But in order to maintain her cause of action against the Department on appeal, the plaintiff still argues that Mr. Rachal did not validly owe a debt to OSBM for the occupied bed fee invoiced to him, and that the debt paid by Mr. Rachal and his insurer was in fact the same debt owed by OSBM to the Department. We disagree.
As convincingly argued by OSBM, the plaintiff has failed to point to any constitutional provision, statute, or regulation prohibiting OSBM from including the cost of the occupied bed fee in its charges to its patients, or from separately itemizing the charges for the occupied bed fee in its invoices. To the contrary, as emphasized by OSBM, the language of La. R.S. 46:2625, interpreted in light of the applicable federal regulations and the analogous language of former La. R.S. 47:8054, warrants the opposite conclusion.
OSBM presented the affidavit of Leon E. LeBreton, a certified public accountant and expert witness previously qualified in various courts in matters relating to Medicare, Medicaid, and other third-party medical expenses reimbursement, as well as the interrelationship between state and federal Medicaid programs, state plans for Medicaid services, and Federal Financial Participation (FFP), or federal funding for state Medicaid programs. In his affidavit, Mr. LeBreton systematically reviewed the applicable federal Medicaid and Medicare regulations, as well as Louisiana's corresponding statutory and regulatory provisions intended to comply with the federal regulations and to implement Louisiana's Medicaid program in order to qualify for FFP. See La. R.S. 46:2623(E).[7] The conclusions and opinions expressed therein were obviously helpful to the trial court, and were unrebutted by the plaintiff.
*603 In summary, Mr. LeBreton demonstrated that the occupied bed fee was in fact approved by the federal government as a "Provider Assessment Program," and that such an approved provider fee must be imposed uniformly upon all providers within the class subject to the fee, even if the provider provides services only to private-pay patients not covered by either Medicaid or Medicare. He explained that because the occupied bed fee is by its nature a variable cost (because the fee applies only to those beds occupied by patients), based upon his experience in the healthcare industry, it is prudent and reasonable from a business accounting standpoint to pass on the cost of the fee to the one utilizing the provider's services (the patient occupying the bed). Both the affidavit of Mr. LeBreton and the affidavit of Kevin C. Londeen, the Department's expert witness in the same field, confirm that no federal or state law or regulation prohibits Louisiana nursing homes from passing on the cost of the occupied bed fee to their patients, if they choose to do so for business or economic reasons.
Louisiana Revised Statutes 46:2625(C)(1) provides, in part:

The [DJepartment is hereby authorized and directed to adopt and promulgate, pursuant to the Administrative Procedure Act, such rules and regulations as are necessary to administer the fees imposed herein, including but not limited to rules and regulations regarding the collection and payment of the fees and the records necessary to be maintained and made available by the providers on whom the fees are imposed. . . .
(Emphasis added.)
A reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless they are found to be arbitrary, capricious, or manifestly contrary to its rules and regulations. In The Matter of Recovery I, Inc., 93-0441, p. 11 (La.App. 1st Cir.4/8/94), 635 So.2d 690, 696, writ denied, 94-1232 (La.7/1/94), 639 So.2d 1169.
There has been no showing by the plaintiff that the Department has ever adopted any rule or regulation imposing any prohibition or restriction on nursing homes charging their patients for the cost of the occupied bed fee. Under La. R.S. 46:2625(C)(1), the Department would clearly have the discretionary authority to do so in order to regulate "the collection and payment of the fees," as well as the discretionary authority to require nursing homes to maintain appropriate records documenting that the occupied bed fee was not charged to patients. To the contrary, the deposition testimony of the Department's program manager for Medicaid long-term care, John Marchand, and the affidavits of the defendants' experts affirmatively refute the existence of any such rule or regulation. The evidence in the record further demonstrates that the Department interpreted its rules and regulations as precluding any duty on its part to regulate the contractual relationship between nursing homes and private-pay patients, including any charges by nursing homes to patients for the occupied bed fee.
Additionally, as emphasized by OSBM, under Louisiana's Medicaid program, the Medicaid daily reimbursable rate for each nursing home includes each such provider's "pass-through cost component," which in turn is defined as including "the provider fee as established by the Department[.]" La. Adm.Code, Title 50, §§ 1301, 1303. Thus, a nursing home may obtain payment from the state Medicaid program for the *604 occupied bed fee. Because federal Medicaid regulations require uniformity of application of the state "Provider Assessment Program" or provider fee regulations, the occupied bed fee may also be passed on to private insurers or private-pay patients as an allowable cost. See 42 C.F.R. § 433.68(b) and La. R.S. 46:2625(A)(2).
Former La. R.S. 47:8054 was part of the Healthcare Affordability Act enacted by Acts 2005, No. 182, § 2, effective July 1, 2007, and repealed by Acts 2006, No. 521, § 2, effective June 30, 2009. It provided, in pertinent part:
A. Beginning on the fee effective date, there shall be levied, and thereafter collected and paid as provided in this Chapter, by each hospital covered by this Chapter, a fee. . . .
. . .
F. Any fee collected pursuant to this Chapter shall be considered an allowable cost for purposes of Medicare and Medicaid cost reporting and reimbursement.

G. (1)(a) No hospital shall pass on the cost of this fee or include the fee as an itemized and separately listed amount on any statement sent to any patient, responsible party, insurer, or self-insured employer programs. If such a violation occurs, it shall be considered a violation of hospital minimum standards. If any such party has reason to believe that the fee has been passed on to him, or an attempt was made to do so, he may submit in writing to the Department of Revenue a request for an investigation along with evidence that the fee has been passed on or that an attempt was made to pass on the fee. The department shall have an affirmative duty to protect the parties above against any violation of this Subsection.

(b) Any bill or statement sent to a patient, responsible party, insurer, or self-insured employer program . . . shall contain a statement that "This bill does not contain any cost of the fee imposed by the Healthcare Affordability Act...."
. . .
(3) Upon any finding by the Department of Revenue of a violation of this Subsection, it shall order full restitution to the affected party, including judicial interest computed from the time that the violation occurred until payment of the restitution.
(Emphasis added.)
While the foregoing statute is not directly in pari materia with La. R.S. 46:2625, as it involves a fee imposed upon hospitals rather than nursing homes, it is unquestionably analogous to La. R.S. 46:2625 in its object: the imposition of a mandatory fee upon health care facilities, generating revenue for the state. The two statutes co-existed until La. R.S. 47:8054 was repealed, and it must be presumed that the legislature was aware of their similar objects and analogous purposes when the latter was enacted in 2005. It is therefore appropriate to consider the language of La. R.S. 47:8054 in interpreting the analogous language of La. R.S. 46:2625.
It is particularly significant that the legislature designated the fee assessed against hospitals under La. R.S. 47:8054 as "an allowable cost for purposes of Medicare and Medicaid cost reporting and reimbursement" only, and that it expressly prohibited any hospital from passing on the fee "as an itemized and separately listed amount on any statement" to any private-pay patient, insurer, or other private source of third-party reimbursement. That provision stands in marked contrast to La. R.S. 46:2625(A)(2)'s language, which expressly designates the occupied bed fee *605 as "an allowable cost for purposes of insurance or other third party reimbursements." Further, the legislature considered it necessary in La. R.S. 47:8054(G)(1)(b) to mandate an unequivocal disclaimer in each bill or statement sent by a hospital, confirming that the hospital was not passing on the costs of the statutory fee to its patients or other responsible third parties. The absence of both a parallel prohibition and a related disclaimer requirement in La. R.S. 46:2625 indirectly but strongly supports the conclusion that the legislature did not intend to prohibit nursing homes from recouping the cost of the occupied bed fee by including it in their charges for services to their patients. If the legislature's intent was to prohibit nursing homes from passing on the cost of the occupied bed fee, it could have easily expressed such intent in the statute.
We also take note that La. R.S. 47:8054(G)(l)(a) imposed an express, affirmative duty upon the Department to protect the patients and responsible third-party payors from any violation of the statute's prohibition against passing on the cost of the fee. The plaintiff contends that La. C.C. arts. 2302 and 2303 provide the basis for a duty on the part of the Department to ensure that only nursing homes are bearing the cost of the occupied bed fee and to protect patients from paying a fee they did not owe. If that contention is correct, then the duty imposed by La. R.S. 47:8054(G)(l)(a) would have clearly been unnecessary and superfluous, as the Department would have owed a similar duty relating to hospital patients under La. C.C. arts. 2302 and 2303. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Pumphrey v. City of New Orleans, 05-979, p. 11 (La.4/4/06), 925 So.2d 1202, 1210. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given each such provision, and that no unnecessary words or provisions were used. Lasyone v. Phares, 01-1785, p. 4 (La.App. 1st Cir.5/22/02), 818 So.2d 1068, 1071, writ denied, 02-1711 (La.10/14/02), 827 So.2d 423.
The plaintiff argues, in effect, that because the occupied bed fee was inaccurately designated on the patient invoices as a "state provider tax" rather than an agency fee imposed on the provider, OSBM was attempting to "pass on" a nonexistent tax, a tax never in fact levied by the legislature. Thus, it is argued, Mr. Rachal paid a debt that was not in fact due by him to either OSBM or the Department. This argument is likewise unconvincing. Although the plaintiff is correct in her observation that the occupied bed fee is not in fact a constitutionally-authorized tax, imposed directly by the legislature, such does not change the fact that the fee was legally imposed by the Department as authorized by the legislature. It is undisputed that the actual charge itemized and billed by OSBM, as part of the total charge for its services, was its actual cost of the occupied bed fee imposed by the Department pursuant to its statutory authority, and not an unauthorized tax collected under false pretenses. The mere circumstance of a semantic error in the fee's designation as a "provider tax" in OSBM's invoices, rather than an agency or administrative "provider fee," cannot reasonably serve as the basis for a substantive civil cause of action for recovery of a thing not due.[8]
*606 In summary, we conclude that neither of the plaintiffs assignments of error have merit, and that summary judgment was appropriately rendered as a matter of law.

DECREE
The judgment of the trial court, granting the motions for summary judgment of the defendants-appellees, Ollie Steele Burden Manor, Inc., St. Clare Manor, and the State of Louisiana, through the Department of Health and Hospitals, and dismissing with prejudice the claims of the plaintiff-appellant, Alice Fae Regan, against the defendants-appellees, is affirmed. All costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
DOWNING, J., dissents in part and agrees in part and assigns reasons.
McCLENDON, J. concurs with the result reached.
DOWNING, J., dissents in part and agrees in part.
I respectfully dissent insofar as the majority affirms the grant of summary judgment in favor of Ollie Steele Burden Manor, Inc. (OSBM) and against the plaintiffs. From the evidence filed in connection with the motion for summary judgment, it is clear that OSBM was collecting from Mr. Rachal for a debt that OSBM, not Mr. Rachal, owed. OSBM is, therefore, bound to restore the money paid. La. C.C. art. 2299 provides that "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." La. C.C. art. 2300 provides that "[a] thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist."
Perhaps OSBM could have increased its charges to cover the cost of the occupied bed fee, but it did not. Rather, it impermissibly and explicitly passed the fee on to its patients. As the majority notes, the fee adopted and imposed by the Louisiana Department of Health and Hospitals is to be imposed upon all nursing facilities or nursing homes, and not upon their patients.
Accordingly, as a matter of law, OSBM was not entitled to entry of summary judgment in its favor.
I agree with the majority, however, that the Department was entitled to summary judgment in its favor, dismissing it from the litigation. The Department was paid by OSBM fees that OSBM owed to it. As the majority notes, this is not a case where the plaintiffs paid the Department directly for a debt OSBM owed, and there is no evidence that the Department acted in bad faith. The plaintiffs have no legal basis for recovery from the Department.
Accordingly, I respectfully dissent in part and agree in part.
NOTES
[1] By the time of the trial court's judgment appealed herein, the daily charge was $8.02.
[2] OSBM also served a cross-claim against the Department for any amount for which it might be cast in judgment to Mr. Rachal for reimbursement of the fee payments.
[3] Subsection B of the statute was effective April 1, 1992. The statute has since been amended by Acts 1999, No. 1192, § 1 and Acts 2006, No. 163, § 3, but the amendments are not relevant to the issues presented here.
[4] See also La. C.C. art. 1968 ("The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy.")
[5] There is a venerable legal maxim: Tout ce que la hi ne defend pas est permis. ("Everything that the law does not forbid is permitted.") Black's Law Dictionary 1760 (8th ed.2004). The plaintiff's argument would in effect stand this maxim on its head, or reverse its meaning, to read: "Everything that the law does not permit is forbidden."
[6] Former La. C.C. art. 1764(A) provided that "[a]ll things that are not forbidden by law, may legally become the subject of, or the motive for contracts[.]" Although this codal article and the quoted language were repealed as part of the 1984 revision of the Civil Code, the basic legal principle remains a viable part of our law.
[7] The applicable federal regulations referenced included 42 C.F.R. § 433.68(b) and (d). The applicable Louisiana regulation by which the Department initially imposed the occupied bed fee is La. Reg., Vol. 18, No. 7 (July 20, 1992), "Fees for Nursing Facility Beds."
[8] In that regard, we note that the fee imposed by former La. R.S. 47:8054 was statutorily termed a "fee" rather than a "tax," although it was imposed directly by the legislature under Title 47 of the Revised Statutes, dealing with revenue and taxation, rather than under Title 46, dealing with public welfare and assistance. See La. Const. Art. 7, § 2.1 and La. R.S. 46:2625(B). A "tax" is generally defined as "[a] monetary charge imposed by the government on persons, entities, transactions, or property to yield public revenue." Black's Law Dictionary 1496 (8th ed.2004). See also Merriam-Webster's Collegiate Dictionary 1280 (11th ed.2008) ("a charge usu[ally] of money imposed by authority on persons or property for public purposes"). A "fee" is generally defined as "a fixed charge" or "a sum paid or charged for a service." Id. at 459. Given the foregoing definitions, the occupied bed fee imposed by the Department to generate net revenue might reasonably be considered, in ordinary lay usage, as a "tax."